1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>   v.<br><br>JOSE CORTES,<br><br>               Defendant. | CASE NO. 2:23-cr-00025-TL-5<br><br>ORDER ON MOTION FOR REVIEW OF DETENTION ORDER |

This matter is before the Court on Defendant Jose Cortes's Motion for Review of Magistrate Judge's Detention Order (Dkt. No. 60), appealing the March 7 detention order issued by the Honorable S. Kate Vaughan, United States Magistrate Judge (Dkt. No. 54). Having conducted a *de novo* review and considered the Indictment (Dkt. No. 1), the Pretrial Report (Dkt. No. 19), Judge Vaughan's order (Dkt. No. 54), the audio recording of the March 7 detention hearing, the motion and accompanying documents, the Government's response to Mr. Cortes's motion (Dkt. No. 66), and the relevant record, the Court GRANTS Mr. Cortes's motion, REVOKES the detention order, and ORDERS his release with conditions, for the reasons explained below.

# I.   BACKGROUND

Mr. Cortes faces a single charge related to controlled substances. On February 22, 2023, a grand jury indicted Mr. Cortes on one count of Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The charge concerns an alleged conspiracy to distribute controlled substances over an unknown length of time involving several indicted co-defendants. Mr. Cortes was arrested at his home in Washington State on March 2, 2023. On the same day, Pretrial Services filed a report with a recommendation that Mr. Cortes be released pending trial on his personal recognizance under their supervision and with the special conditions outlined in their Report. Dkt. No. 19 at 3–4. The Government filed a motion seeking Mr. Cortes's detention. Dkt. No. 40. Judge Vaughan conducted a detention hearing and ordered that Mr. Cortes remain detained. Dkt. No. 54.

Mr. Cortes now appeals the detention order and seeks his release pending trial on "whatever conditions this Court imposes." Dkt. No. 60 at 2; *see* 18 U.S.C. § 3145(b). The Government opposes. Dkt. No. 66 at 1.

# II.   LEGAL STANDARD

## A.   Standard of Review

A person who is ordered detained by a magistrate judge "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court then reviews the detention order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191–93 (9th Cir. 1990).

## B.   Detention Standard

The Bail Reform Act ("the Act") requires that a court release a criminal defendant on personal recognizance or on an unsecured appearance bond before trial unless there is a determination that such release "will not reasonably assure the appearance of the person as

1  required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b).

2  This default requirement is in accord with the principle that "[i]n our society, liberty is the norm,

3  and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481

4  U.S. 739, 755 (1987). "Only in rare cases should release be denied, and doubts regarding the

5  propriety of release are to be resolved in favor of the defendant." *United States v. Santos–Flores*,

6  794 F.3d 1088, 1090 (9th Cir. 2015) (*citing United States v. Motamedi*, 767 F.2d 1403, 1405 (9th

7  Cir. 1985)). If a court determines that such release will not reasonably assure the defendant's

8  appearance and the safety of the community, the court must impose "the least restrictive further

9  condition, or combination of conditions," that will reasonably assure these goals. 18 U.S.C.

10 § 3142(c)(1)(B). The Act only requires detention where a court finds that *no* such condition or

11 combination or conditions can do so. 18 U.S.C. § 3142(e)(1).

12        A court must determine whether there are conditions of release that reasonably assure

13 two goals: the appearance of the defendant and the safety of the community. 18 U.S.C.

14 § 3142(g). In making this determination, a court considers the following factors: (1) the nature

15 and circumstances of the offense charged, including whether the offense involves a controlled

16 substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics

17 of the defendant, including the defendant's character, physical and mental condition, family ties,

18 employment, financial resources, length of residence in the community, community ties, past

19 conduct, history relating to drug or alcohol abuse, criminal history, and record concerning

20 appearance at court proceedings; and (4) the nature and seriousness of the danger to any person

21 or the community that would be posed by the defendant's release. *Id*. To obtain pretrial

22 detention, the government bears the burden of showing by a preponderance of the evidence that

23 the defendant poses a flight risk and by clear and convincing evidence that the defendant poses a

24 danger to the community. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991)

**C.    Presumption of Detention**

Where a court finds probable cause that a defendant has committed certain types of offenses, including "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 21 U.S.C. § 801 *et seq.*, there is a presumption of detention. 18 U.S.C. § 3142(e)(3)(A). While the Ninth Circuit has not ruled on this issue, numerous other circuits have held that an indictment "conclusively determines the existence of probable cause," *Kaley v. United States*, 571 U.S. 320, 328 (2014) (*citing Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)), and is sufficient to trigger the presumption. *See*, *e.g.*, *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991); *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986); *United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985). Here, Mr. Cortes is charged by indictment with a single count of Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. This offense carries a potential minimum sentence of 10 years. 21 U.S.C. § 841(b)(1)(A). Therefore, the presumption of detention is triggered here. *See* 18 U.S.C. § 3142(e)(3)(A).

However, the presumption is subject to rebuttal by a defendant. 18 U.S.C. § 3142(e)(3). In addition, while the presumption shifts the burden of production to the defendant, the burden of persuasion remains with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Finally, when a defendant rebuts the presumption, "the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" *Id.* (*quoting United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

### III.    DISCUSSION

To make its determination, the Court first evaluates the presumption of detention contained in 18 U.S.C. § 3142(e)(3)(A) and then considers the factors enumerated in 18 U.S.C. § 3142(g).

**A.      Rebuttal of the Presumption of Detention**

**1.      Risk of Flight**

Mr. Cortes argues that he is not a flight risk because he has resided in Washington State since he was a child and has extensive ties to the state. Dkt. No. 60 at 5-6. The Government states that Mr. Cortes is a Mexican citizen with an alleged business in Mexico and other ties to the country. Dkt. No. 66 at 13. However, Mr. Cortes represents that he has no family or friends in Mexico while his wife, newborn child, parents, and siblings all live in Washington State. *Id.* In addition, his only business interest is a source of supply for his tequila business that is sold in Washington State. *Id.* at 5. The Government also raises a concern as to Mr. Cortes's access to large amounts of cash, noting the large amount of cash seized from his residence. Dkt. No. 66 at 8, 13. But Mr. Cortes proffered that the vast majority of the cash recovered from the home was the legitimate cash savings of his parents from their restaurant.[1] Dkt. No. 60 at 2. Finally, Mr. Cortes points to his limited criminal history to demonstrate his ability to comply with court orders. Dkt. No. 60 at 6–7. The Court finds these facts sufficient for Mr. Cortes to meet his burden of production to rebut the presumption as to his risk of flight.

**2.      Danger to the Community**

The government only dedicates one paragraph of its response to arguing that Mr. Cortes is a danger to the community, relying on the nature as well as seriousness of the offense and the fact that Mr. Cortes was caught with a number of firearms. Dkt. No. 66 at 14. Of course, drug trafficking is a serious crime and endangers the community, but detaining a person merely based

---

[1] At the detention hearing, Mr. Cortes's counsel also pointed out how many noncitizens and immigrants do not trust the banking system and store their cash at home. Audiotape: Arraignment and Detention Hearing, Dkt. No. 53, at 19:38-19:55 (on file with the Court) (the "Audiotape"). The bulk of the cash recovered at the home was in a safe in the bedroom which the Government acknowledges appeared to be occupied by Mr. Cortes's parents. Dkt. No. 66 at 8. Mr. Cortes's parents also told Mr. Cortes's counsel that the cash belongs to them and that the safe was indeed in their bedroom. Audiotape, at 20:08-20:15.

1   on the accusation of such a crime would be to ignore the existence of the rebuttable presumption

2   specifically created by Congress. As to the issue of the seized firearms, Mr. Cortes correctly

3   notes that there are no allegations that firearms were used or that Mr. Cortes ever referenced any

4   firearms during any of the taped conversations. Dkt. No. 60 at 2. He further asserts that he was

5   not a prohibited person and it is not illegal for him to possess a firearm. *Id.* In fact, at the

6   detention hearing, Mr. Cortes represented (and the Government has not disputed) that he has a

7   concealed carry permit in Washington State. Audiotape, at 21:05-21:22. The Court finds these

8   facts sufficient for Mr. Cortes to meet his burden of production to rebut the presumption as to his

9   being a danger to the community.

10       While the Court finds Mr. Cortes has presented sufficient evidence to rebut the

11   presumption of detention, the presumption remains as an evidentiary finding in favor of

12   detention. *Hir*, 517 F.3d at 1086. Therefore, the Court now turns to the evidence relevant to

13   factors listed in § 3142(g) and will weigh the presumption along with the factors.

14   **B.    The § 3142(g) Factors**

15       **1.    Nature and Seriousness of the Offense Charged**

16       As detailed above, Mr. Cortes is charged with an offense that "involves . . . a controlled

17   substance," including fentanyl and cocaine, and which carries a minimum of 10 years

18   imprisonment. 18 U.S.C. 3142(g)(1); Dkt. No. 1 at 1–2. The Government alleges that Mr. Cortes

19   conspired with several co-defendants to distribute significant amounts of these controlled

20   substances, though the Government does not identify how long the conspiracy was in operation

21   or how long Mr. Cortes might have been a participant. While this is undoubtedly a serious

22   offense, it does not necessarily implicate Mr. Cortes in any violence, or threats of violence, that

23   might endanger members of the public. *See infra* Section III.B.4.

24

Therefore, the Court finds that the nature and seriousness of the offense charged weighs narrowly in favor of detention.

### 2.      Weight of the Evidence

The Government devoted the bulk of its argument at the detention hearing and in its response papers to the details of a drug trafficking investigation that led to Mr. Cortes's arrest. Dkt. No. 66 at 2–9. The Government provides transcripts of intercepted calls as well as photos of text messages and items recovered in a search of Mr. Cortes's residence. *Id.* at 4–6; Dkt. No. 66-1. But despite all the evidence the Government has and may ultimately bring to bear in this case, Mr. Cortes is still presumed innocent before trial, and nothing in the Court's analysis may be construed as modifying or limiting that presumption. 18 U.S.C. § 3142(j). Further, the Ninth Circuit has repeatedly declared that the weight of the evidence is the least important factor, and the statute neither requires nor permits a pretrial determination of guilt. *Gebro*, 948 F.2d at 1121. *See also Hir*, 517 F.3d at 1090; *United States v. Winsor,* 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1408.

Therefore, while the Court finds that the weight of evidence weighs in favor of detention, it treats this factor as the least important.

### 3.      The History and Characteristics of Mr. Cortes

Aside from the serious nature of the offense and weight of the evidence against Mr. Cortes, the Government's arguments regarding his risk of flight focus almost exclusively on his connections to Mexico. First, the Government argues that Mr. Cortes is a dual citizen of Mexico and "it is not difficult for a Mexican citizen to enter that country without a passport."[2] Dkt. No. 66 at 9, 13. But relying on these facts alone would justify detention merely on the basis of

---

[2] The Government seized Mr. Cortes's passports. Dkt. No. 66 at 9.

citizenship, which this Court cannot condone. The Ninth Circuit has held that the fact that a

defendant may be from a different country "does not tip the balance either for or against

detention" or point conclusively to a determination that a defendant poses a serious risk of flight.

*Motamedi*, 767 F.2d at 1408.

Instead, a court considers how long the defendant has lived in the United States, whether

they have worked here, whether they own any property here, and whether they have any relatives

who are U.S. residents or citizens. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).

As detailed in the report from Pretrial Services, Mr. Cortes is a naturalized U.S. citizen who has

lived in Washington State for at least 19 years, or his entire adult life to this point. Dkt. No. 19 at

2. He lives with his parents, one of his brothers, his wife, and his newborn child, and members of

his family were present at the detention hearing. *Id*. Mr. Cortes completed high school and holds

an associate degree from Everett Community College. *Id*. He works at his parents' restaurant in

Everett, WA, and operates his own tequila company. *Id*. These facts demonstrate extensive ties

to both Washington State and the United States.

Second, the Government asserts that Mr. Cortes has "regular and recent foreign travel to

Mexico." Dkt. No. 66 at 9, 13. However, the only evidence of travel to Mexico are two trips (one

in 2022 and one in 2023) mentioned in the Pretrial Services Report. Dkt. No. 19 at 2. And

knowing of those trips, the United States Probation Office still recommended release.

Third, the Government asserts Mr. Cortes has business interests in Mexico. Dkt. No. 66

at 9, 13. While accurate, his business interest is a source of supply for a tequila business that he

operates and through which he sells tequila in Washington State. Dkt. No. 60 at 5. Contrary to

the Government's assertion, there is little evidence of the "strong ties" the Government claims

Mr. Cortes has to Mexico beyond his birth there. Dkt. No. 66 at 9. Thus, the fact that Mr. Cortes

is a citizen of Mexico and has some connection to the country does not tip in favor of detention.

1       The Government also argues that Mr. Cortes "apparently has access to large amounts of

2  cash," based on the money found during the investigation and some unclear observations about

3  his family's properties. Dkt. No. 66 at 13. But all that cash was seized, *id.*, and Mr. Cortes

4  proferred that the vast majority of it was the cash savings of his parents from the restaurant they

5  run. Dkt. No. 60 at 2. At the hearing, the Government also stated that there is "no assurance that

6  the government has secured all of the considerable resources that Mr. Cortes apparently has at

7  his command." Audiotape, at 10:39-10:46. These statements are speculative. The Government

8  has not offered any evidence that Mr. Cortes has continued access to substantial additional

9  resources, especially now knowing he will be monitored if released.

10      Finally, while Mr. Cortes has a prior criminal history, the nature and age of that history

11  mitigates the Court's concerns. At most, Mr. Cortes has two convictions for misdemeanor assault

12  that are 10 years old and for which he was not incarcerated.[3] Dkt. No. 19 at 2. Further,

13  Mr. Cortes appears to have complied with all conditions of his supervision in those matters,

14  including an anger management assessment and an alcohol information school. *Id*. Indeed, at the

15  detention hearing, the Government acknowledged that Mr. Cortes's criminal history is "fairly

16  modest" and "not terribly concerning." Audiotape, at 12:46-12:51. Judge Vaughan also observed

17  that Mr. Cortes's prior criminal history was "somewhat dated." Audiotape, at 28:30-28:33. The

18  Government argues that Mr. Cortes's proposal to submit to GPS monitoring will not mitigate the

19  risk of flight since GPS devices are easily removed. Dkt. No. 66 at 13. However, "[d]etention

20  determinations must be made individually and, in the final analysis, must be based on the

21  evidence before the court regarding the particular defendant." *See United States v. Tortora*, 922

22  F.2d 880, 888 (1st Cir. 1990); *see also United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir.

23

24  [3] The criminal record history provided in the pretrial report is ambiguous as to whether there were two separate pleas to misdemeanor assault or a single plea to misdemeanor assault in satisfaction of two incidents.

2021) (*citing Tortora*, 922 F.2d at 888). This approach is faithful to the text of the Act, which requires the Court to consider "the history and characteristics of *the person*," a reference only to evidence regarding the particular defendant under consideration, not generalities. 18 U.S.C. § 3142(g)(3) (emphasis added). And the evidence that the Court has at this time is that Mr. Cortes has complied with previous court orders.

Therefore, the Court finds that Mr. Cortes's history and characteristics weigh in favor of release.

### 4.      Danger to Any Person or the Community

Both at the hearing and in its motion papers, the Government argues that Mr. Cortes is a danger based only on the facts of their investigation, including alleged drug sales and the seizure of firearms. Dkt. No. 66 at 14. But the relevant inquiry is whether the Government can prove by clear and convincing evidence that Mr. Cortes poses a *future* harm of danger to the community. *See Salerno*, 481 U.S. at 751 ("[u]nder the Bail Reform Act, . . . a judicial officer evaluates the likelihood of future dangerousness . . ."). Here, the Government does not allege that Mr. Cortes was observed using or threatening violence against any other person during their investigation, nor was Mr. Cortes observed using or threatening the use of firearms against any other person. The Government describes that during the investigation, "agents overheard hundreds of calls related to drug trafficking and violence" (Dkt. No. 66 at 2); however, notably, none of the calls related to violence appear to have involved Mr. Cortes. Moreover, at the hearing, Mr. Cortes proffered that he has a concealed carry permit, which the Government does not dispute. The mere recitation of the investigation, without a more particularized assessment of Mr. Cortes that articulates an identifiable future threat, does not satisfy the Government's burden in this matter. Finally, Mr. Cortes has successfully completed a 24-month term of probation, demonstrating the

ability to follow court orders. The Court finds that a consideration of danger to any person or the community weighs in favor of release.

## IV.   CONCLUSION

For the reasons explained above, the Court finds that the Government has not met its burden by a preponderance of the evidence that there is no combination of conditions of release that will reasonably assure Mr. Cortes's appearance. While the serious nature of the offense when combined with the weight of the evidence does raise some concern regarding the risk of flight, the weight of the evidence is the least important factor. *Gebro*, 948 F.2d at 1121. Further, the statue requires only "reasonable assurance," and not a "guarantee." *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985). *See also United States v. Djoko*, No. CR19-0146, 2019 WL 4849537, at *5 (W.D. Wash. Oct. 1, 2019) (conditions of release cannot guarantee defendant's appearance but the standard under § 3142(g) is reasonable assurance); *United States v. Chen*, 820 F.Supp. 1205, 1208 (N.D. Cal. 1992) ("Section 3142 does not seek ironclad guarantees"). The Court also finds that the Government has not met its burden by clear and convincing evidence that there is no combination of conditions of release that will reasonably assure the safety of any other person and the community.

Accordingly, Mr. Cortes's Motion for Review of Magistrate Judge's Detention Order (Dkt. No. 60) is GRANTED, and Judge Vaughan's Detention Order (Dkt. No. 54) is REVOKED. The Court concludes that the conditions recommended by Pretrial Services along with the additional conditions proposed by Mr. Cortes will reasonably assure Mr. Cortes's appearance and the community's safety. Dkt. No. 19 at 4; Dkt. No. 66 at 2–3, 10. Therefore, the Court REFERS the Motion to the Magistrate Judge on duty for the purpose of releasing Mr. Cortes and issuing an appearance bond that shall include the following:

1      1)  The eight conditions recommended in the Pretrial Services Report, Dkt. No. 19 at

2          4;

3      2)  Mr. Cortes shall participate in the location monitoring program with Active

4          Global Positioning Satellite technology. Mr. Cortes shall be restricted to his

5          residence at all times except for employment, medical appointments for himself,

6          legal appointments for this case, or as otherwise approved by the location

7          monitoring specialist. Mr. Cortes shall abide by all program requirements, and

8          must contribute towards the costs of the services, to the extent financially able, as

9          determined by the location monitoring specialist. The location monitoring

10         specialist will coordinate Mr. Cortes's release with the U.S. Marshals;

11     3)  Mr. Cortes shall be released to the third-party custody of his parents, Marcella

12         Cortes and Roque Arroyo, who must sign an Agreement to Supervise confirming

13         that they agree to report any violation of a release condition to the Court; and

14     4)  Any other conditions the Magistrate Judge or Pretrial Services deems appropriate.

15   Dated this 20th day of April 2023.

16

17                                 Tana Lin

18                                 United States District Judge

19

20

21

22

23

24